IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANA JULIA MENDEZ, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-3153 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI[1], | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                     December 20, 2022

      This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Ana Julia Mendez ("Mendez") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Plaintiff's Request for Review ("Pl. Br.") (Doc. 21); Defendant's Response to Plaintiff's Request for Review ("Def. Br.") (Doc. 24); Plaintiff's Reply Brief ("Pl. Reply") (Doc. 27) and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 16) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ and to award benefits, or alternatively to remand for further proceedings. The Commissioner seeks the entry of an order affirming the decision of the ALJ. For the reasons set forth below, we deny the request for review and affirm the ALJ's decision.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, therefore, she should be substituted for Andrew Saul as Defendant in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I.      **FACTUAL AND PROCEDURAL HISTORY**

This matter is the third civil action Mendez has brought in this Court relating to her pursuit of SSI disability benefits beginning in 2008. The current appeal arises from an ALJ's March 31, 2020 decision that Mendez was not disabled during a two-year period of time more than a decade earlier. This closed period of time that is the subject of review arose from the circumstance that, while still litigating the denial of a prior application, Mendez filed a new application for SSI and was found to be disabled pursuant to the new application beginning on May 27, 2010. That favorable decision was rendered separate from the prior administrative denial of her first application and the federal litigation and additional administrative hearings that ensued, which have culminated in this action. Any question of the propriety of the favorable decision Mendez received or her ongoing disability since May 2010 is *not* before this Court.

A.      **Plaintiff's application for benefits**

Mendez filed the application for disability with which we are concerned on April 17, 2008. She was 42 years old and alleged disability due to depression, anxiety, insomnia, back problems, asthma, and attention deficit hyperactivity disorder (ADHD). (R. 46, 49, 67-73.) She dated the onset of her disability to January 25, 2008, although she not worked since 1998. She was not fluent or literate in English but had completed a GED program in Puerto Rico. (R. 74-75.)

B.      **The first administrative hearing and first District Court review**

After her claim was denied by the state agency, she requested and received a hearing before an ALJ. (R. 49.) Both Mendez and a vocational expert ("VE") testified at the April 1, 2010 hearing, and Mendez was represented by counsel. On April 9, 2010, ALJ Jennifer Lash issued an unfavorable decision, finding Mendez capable of performing a range of work at the light exertional level. (R. 35.) The Appeals Council declined Plaintiff's request to set aside the ALJ's decision, and Plaintiff then sought review in the district court. *See* Civ. A. No. 12-4963.

Upon referral for our review, we agreed with Plaintiff that the ALJ gave an inadequate explanation for her rejection of the opinions of two treating psychiatrists, Maria Zoratti, M.D., and Onilda Herran, M.D. We also concluded that these errors improperly tainted the ALJ's evaluation of Mendez's credibility. We recommended that the matter be remanded for the ALJ to address the conflicting evidence in the record and to provide a more detailed explanation for her decision. The District Court approved and adopted our Report and Recommendation. *See* Civ. A. No. 12-4963, Docs. 20 & 21.

C.  **The second administrative hearing and second District Court review**

On May 28, 2014, ALJ Lash held a second hearing. At this point, Mendez was seeking benefits only for a closed period between January 25, 2008 and May 26, 2010, as the Commissioner had granted a new application providing benefits from May 27, 2010 onward. Mendez's counsel invited the ALJ to focus primarily on Mendez's mental, rather than physical, impairments during this closed period. (R. 627.) Neither counsel nor the ALJ took further testimony from Mendez but rather posed new hypothetical questions to a VE. On August 14, 2014, the ALJ again issued an unfavorable decision. (R. 489.) Considering what she again found to be Mendez's capacity to work at a light exertional level albeit subject to additional non-exertional limitations, and relying upon testimony offered at the hearing by the VE, the ALJ determined that there were jobs in the national economy that Mendez could perform. (R. 503.)

Mendez sought review of that ALJ decision as well, but the Appeals Council again declined review. (R. 465.) Mendez initiated another civil action on October 19, 2015. *See* Civ. A. No. 15-5668. She argued that ALJ Lash again erred in rejecting the opinion of her treating psychiatrists, Dr. Zoratti and Dr. Herran, and in rejecting her own subjective testimony, which she asserted should have been accepted as credible. In a second Report and Recommendation, filed on July 27, 2017, we concluded that the ALJ again improperly rejected Mendez's treating psychiatrists'

3

opinions and found that this tainted her review of Mendez's testimony. We thus concluded that all of the issues identified by Plaintiff justified a remand. The District Court agreed, and on August 14, 2017, it vacated the ALJ's decision and remanded the case to the Commissioner for a new decision.

### D. The third administrative hearing

Pursuant to agency protocols, the Appeals Council ordered review of the case by a different ALJ, and the matter was assigned to ALJ Kathleen McDade. Her directive was to examine the treating psychiatrists' opinions against the backdrop of the entire record and, if those opinions were to be rejected, to set out the basis for rejecting them, taking into account conflicting evidence, as well as to reconsider the question of the claimant's credibility. (R. 651-52.) ALJ McDade scheduled a hearing for January 3, 2019, but counsel and the ALJ agreed at that time, off the record, that she would not take further claimant testimony, as Mendez would stand on her testimony from the 2010 hearing, which was much closer to the time period at issue. (R. 676.) The ALJ then directed interrogatories to a VE, following which counsel requested a supplemental hearing to further explore the VE's responses to those interrogatories. That hearing for VE testimony was held on February 6, 2020. (R. 652, 671-89.)

On March 31, 2020, ALJ McDade issued her written decision that Mendez was not disabled during the period between January 25, 2008 and May 26, 2010. (R. 651-65.) Mendez opted not to seek review in the Appeals Council, which was not required where the hearing decision followed a prior federal court remand. Rather, she initiated this third civil action. Briefing has closed and the matter is ripe for review. The parties have consented to disposition of this civil action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

## II. STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Mendez could perform jobs that existed in sufficient numbers in the national economy during the closed period is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. DECISION UNDER REVIEW

As it was at the time of the prior ALJ decision, the issue before ALJ McDade was whether Mendez was disabled within the meaning of the Act from January 25, 2008 through May 26, 2010. In reaching her decision, ALJ McDade relied upon the five-step sequential evaluation process set forth in 20 C.F.R. §416.920(a). At Step One, she found that Mendez had not engaged in substantial gainful activity during the relevant period. (R. 654, Finding No. 1.) At Step Two, she found that Mendez suffered from a number of severe impairments, including right hip osteoarthritis, chronic thoracolumbar pain, calcaneal spur of the left foot, obesity, asthma/COPD, major depressive disorder, and post-traumatic stress disorder. (R. 654, Finding No. 2.) At Step Three, she found that Mendez did not have impairments that met or equaled the severity of the listed impairments

5

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 654, Finding No. 3.)  These findings are not in dispute.

The ALJ then sought to determine Mendez's RFC, defined as "the most [a claimant] can still do despite [her] limitations," 20 C.F.R. §416.945(a)(1).  She found:

> **4. After careful consideration of the entire record, the undersigned finds that, for the period from January 25, 2008, through May 26, 2010, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b) with the following limitations: no more than occasional balancing and climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and frequent bending, crouching, kne[e]ling, or crawling; occasional exposure to extreme cold, dust, fumes, gases, poor ventilation, and other pulmonary irritants; *involving simple and routine tasks; and, to minimize distraction and stress, it should involve no contact with the general public and only occasional interaction with coworkers or supervisors.***

(R. 656, Finding No. 4 (italic emphasis added).)  At Step Four, the ALJ determined that this RFC precluded Mendez from performing her past work as a warehouse packer.  (R. 663, Finding No. 5.)  At Step Five, she relied upon the VE's testimony to conclude that, based upon Mendez's RFC, there existed a significant number of "light" work jobs that she would be capable of performing during the relevant period.  (R. 663, Finding No. 9.)  Specifically, the ALJ determined that Mendez could have performed the work of a "bench assembler," "garment bagger," or "stuffer of textile products."  (R. 664.)  As a result, she found that Mendez had not been disabled between January 25, 2008 and May 26, 2010.  (R. 664, Finding No. 10.)

## IV.    DISCUSSION

Mendez asserts that ALJ McDade erred in the same two respects as her predecessor.  She first contends that the ALJ "erroneously rejected the well-supported opinions of [her] treating psychiatrists," Drs. Zoratti and Herran, "that establish that [she] was disabled."  (Pl. Br. at 8, § I.)  Second, she asserts that the ALJ "contravene[ed] Social Security Regulations" in "reject[ing]

6

Plaintiff's subjective testimony." (Pl. Br. at 22, § II.) She claims that the culmination of these "continuous legal errors on the part of the agency" in a case that "has been pending for so many years" justifies an outright award of benefits by the Court. (Pl. Br. at 24-25.)

Mendez largely repeats her criticism of the prior ALJ decisions, and repeatedly reminds us of our critiques of those prior decisions. But at this point we are satisfied that ALJ McDade carried her burden of explanation and that the determinations she made as to credibility and the weight to be given to expert opinions were within her purview. We set forth our rationale below.

> A. The ALJ did not err by giving the treating psychiatrists' opinions the weight she did.

The Regulations applicable to a claim filed in 2008, as Plaintiff's was, provided that where a "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 416.927(d)(2). The record in Plaintiff's case contained two treating source opinions as to mental health issues: from Drs. Zoratti, who began treating Mendez in January 2007, and Dr. Herran, with whom she treated beginning in April 2009. It also contained an opinion from a state agency reviewing psychologist, John Grutkowski, Ph.D., that reflected a greater capacity for work, in that Dr. Grutkowski did not identify any limitations that would preclude the completion of a normal workweek if other accommodations for Plaintiff's limitations were available (e.g., restrictions as to social interactions). As a result, the treating source opinions on the severity of Mendez's impairments cannot be said to be entitled to "controlling weight" under the Regulations; they would have to have been "not inconsistent with the other substantial evidence in [Mendez's] case record."

Instead, the treating source opinions were to be weighed using the factors provided in 20 C.F.R. § 416.927. *See* SSR 96-2p.

### 1. The treating opinions

#### a) Dr. Zoratti

With respect to the earliest mental health treatment in the record, at the COMHAR clinic beginning in 2006, the ALJ noted that Mendez was "initially diagnosed with major depressive disorder (MDD), severe and recurrent," and that "[h]er condition was noted to be in partial remission in 2007." (R. 659.) The ALJ described what was notable in the therapy session notes, including that Mendez did not like to go out in public. (*Id.*) The ALJ recounted that the treatment notes of the COHMAR psychiatrist, Dr. Zoratti, "indicated a diagnosis of MDD, in partial remission, with generally normal mental status examinations, with poor but improved memory and concentration with medications, and safe affect and mood noted. (Exhibits C7F, C8F)[.]" (R. 660.) The exhibits cited by the ALJ included both the clinic's medical records over the period from February 2007 to June 2008 (Exhibit 8F) but also two documents completed by Dr. Zoratti on June 6, 2008 relative to Mendez's SSI application: a four-page questionnaire calling for narrative responses, and a three-page medical source statement asking for a rating of the level of restriction in Mendez's capacity for various work-related mental activities (collectively Exhibit 7F). (R. 280-86.)

With respect to Dr. Zoratti's June 2008 opinion, ALJ McDade noted that Mendez would have a *marked* limitation in the ability to make judgments on simple work-related decisions and interact appropriately with supervisors and coworkers and an *extreme* limitation in both the ability to understand, remember, and carry out detailed instructions and to respond appropriately to work pressures or changes in routine. (R. 661, citing Ex. C7F.) But as the ALJ noted, Mendez's treatment "at all times was routine and conservative, comprising medication management on a

8

monthly basis and individual therapy on a scheduled weekly basis." (R. 662.) She noted that Dr. Zoratti regularly diagnosed Major Depressive Disorder in partial remission, which the ALJ took to indicate "at least some improvement from a prior condition," and that mental status examinations were generally normal, albeit noting that affect and mood were often described as sad and nervous. (R. 662.) Dr. Zoratti also documented Mendez's report that she experienced significant improvement when a particular medication was added to her medication list in 2008. (*Id.*)

The ALJ gave "little weight" to Dr. Zoratti's opinion, as she found that the ratings of "marked" or "extreme" limitations in mental functioning areas – apart from contact with the public – were not supported in the contemporaneous treatment notes. She noted that the documented presentation by Mendez in a state of worry, anxiety, or sadness did not support the extreme degree of restriction set out in the assessment form, which would ordinarily arise from more extreme symptoms such as panic attacks, hallucinations, mania, paranoia, illogical thinking, disorientation, or difficulty concentrating. (R. 663.)

      b)  Dr. Herran

Dr. Herran was Mendez's assigned psychiatrist at the Cognitive Behavioral Services clinic ("CBS") where Mendez treated on an outpatient basis beginning in April 2009 and until at least December 2010, which is after the May 27, 2010 date as of which she was recognized to be disabled by the Commissioner following review of a subsequent SSI application.

With respect to Dr. Herran's involvement, the ALJ noted that monthly psychiatric progress notes indicated "generally normal mental status evaluations," presenting as "usually cognitively stable," with her mood noted to be only sometimes depressed or anxious, and her insight and judgment rated as "fair." (R. 660.) But when she completed a mental impairment questionnaire in July 2010, she indicated that Mendez faced "marked" restrictions in the abilities to: understand,

9

remember, and carry out even short, simple instructions;[2] to interact appropriately with supervisors and co-workers; and to respond appropriately to changes in a routine work setting. (R. 614 (opinion dated July 28, 2010).) She rated Mendez's degree of restriction in the ability to respond appropriately to work pressures in a usual work setting as "extreme," which is more restricted than the "marked" rating. (R. 614.)

The ALJ stated that she gave "little weight" to the opinion of Dr. Herran, as she did to the opinion of Dr. Zoratti, since the "corresponding and contemporaneous treatment notes do not support assessments of marked or extreme limitations in the mental functional areas (other than, possibly, contact with the public), and sometimes directly contradict such an assessment." (R. 663.) With respect to Dr. Herran in particular, the ALJ noted the incongruity of Dr. Herran's July 2010 medical source statement that Mendez would have "marked" limitations in her ability to understand, remember, and carry out *short and simple* instructions yet she would have only "moderate" limitations in her ability to understand and remember *detailed* instructions – e.g., that she would be *less* limited as to more complex functions. (R. 663.)[3]

### 2. Plaintiff's contentions

Plaintiff faults the ALJ for committing "an error of law," citing 20 C.F.R. § 416.927(d)(2) and SSR 96-2p, when she gave "little weight to the opinions of Drs. Zoratti and Herran" and "[g]reater weight" to the opinion of Dr. Grutkowski. (Pl. Br. at 12, citing R. 663.) She offers three examples to purportedly show that rationales provided by the ALJ for her decision were not supported by substantial evidence.

---

[2] Strangely, however, Dr. Herran indicated that Mendez had a *less* severe restriction – at only the "moderate" level – in the ability to "understand and remember *detailed* instructions." (R. 614.)

[3] We view this internal inconsistency in Dr. Herran's opinion as a quite legitimate reason to reject the degree of restriction offered by Dr. Herran and to accept it only insofar as it was supported by contemporaneous treatment notes, for example, as to limitations involving contact with the public.

Her first argument is that the ALJ's evaluation of Dr. Zoratti's June 4, 2008 opinion is faulty because she did not show her consideration of a contemporaneous report that accompanied Dr. Zoratti's opinion. (Pl. Br. at 14.) We do not agree with Plaintiff that there was an omission by the ALJ here that amounts to "clear error of law." (Pl. Br. at 15.) At R. 660 of her decision, where she recited the evidence of Mendez's mental impairments, the ALJ described both Dr. Zoratti's treatment notes at the COMHAR clinic and the diagnoses she offered, citing to both the Administrative Record exhibit that contained the clinic records, Ex. C8F, and the exhibit containing the opinion and the 4-page report about which Plaintiff complains, Ex. C7F. Plaintiff points to no statement in the ALJ's decision that would seem to indicate that she overlooked or failed to consider the 4-page report from June 4, 2008 that is contained in the same exhibit as the treating source opinion. Plaintiff would like us to hold the ALJ to a standard of articulating every contact with the treating source or report that she reviewed when she evaluated the weight that the opinion warranted. But we do not read the Regulations and Rulings to require this. We will not vacate on this ground.

Plaintiff's second argument is that, in evaluating the treating source opinions, the ALJ considered an opinion rendered in July 2010, which Plaintiff contends was improper, as it was "outside the scope of her review." (Pl. Br. at 15.)[4] We do not find this to constitute error. It was

---

[4] Plaintiff identifies the treating source for this opinion as Dr. Zoratti but it was *Dr. Herran* who offered an opinion in July 2010. Moreover, if this rationale were accepted, no opinion of Dr. Herran could be considered, as both of her statements were rendered outside of the period at issue. *See, e.g.,* R. 364-69 (opinion of Dr. Herran dated "12.18.10"). *Cf.* Pl. Br. at 11-12 (describing this opinion of Dr. Herran as having been offered on *February* 18, 2010). We note that the assessment form of Dr. Herran on which Plaintiff does rely (mistakenly believing it to be from within the closed period) did not purport to seek an assessment by Dr. Herran of Mendez's condition prior to May 27, 2010, which is the relevant period at issue at this point, but rather presumably sought an opinion as to Mendez's then-current condition, which would have been in December 2010.

11

not inappropriate for the ALJ to consider the consistency of treating sources' opinions over time and to consider a particular treating source opinion in the context of treatment. ALJ McDade was not invading the province of the ALJ who had adjudicated the period from May 27, 2010 onward. This argument provides no basis to reverse.

Plaintiff's third argument regarding the handling of treating sources' opinions is that the ALJ has provided us an inadequately-articulated rationale for her alleged "rejection" of the treating source opinions. Mendez faults the ALJ for not including page number references when discussing the evidence despite the fact that the relevant evidence is from a very limited period of time and easy to locate in the Administrative Record. Second, she faults the ALJ for summarizing therapy records. Yet she fails to identify how the ALJ's summary was inadequate or otherwise not substantial evidence in support of her finding regarding the treating source opinions. Again, we find this criticism unpersuasive.[5]

Plaintiff makes one final argument as to an error of law. She faults the ALJ for placing allegedly inordinate emphasis on mental status examination findings made by the treating sources in the record. But this is not for us to criticize. Mental status examinations are one of the criteria that adjudicators are directed to consider under the Regulations as relevant medical evidence. We do not view the ALJ as having relied on this component of the record improperly. Contrary to Plaintiff's criticisms, we are satisfied with the ALJ's handling of the treating source opinions.

---

[5] The ALJ's characterization of this aspect of the record from the COMHAR clinic was that: "Therapy session notes were notable for claimant reports of sadness, nervousness, and frustration, with accompanying lack of energy and poor sleep. She indicated that she preferred to stay home and did not like to go out in public." (R. 659.) *See* Pl. Br. at 16.

**B. The ALJ did not violate the Regulations when she considered Mendez's testimony.**

As she did in her prior requests for federal court review, Mendez again asserts that the ALJ here rejected Plaintiff's testimony due to her misunderstanding of the record as reflected in her rejection of the treating psychiatrists' opinions. Plaintiff offers little more in the way of argument on this point. She does, however, criticize the ALJ for appearing to discount her subjective complaints on the grounds that her medical treatment had been "routine and conservative, without the need for partial hospital programs or inpatient hospitalizations." (Pl. Br. at 23.)

The ALJ stated her credibility finding just after recounting the basis for Mendez's disability claim and before launching into her detailed recounting of the evidence concerning Mendez's physical and mental impairments:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 657.)

Plaintiff offers no particular argument here, and she seems to view this as another error arising from the ALJ's "rejection" of the treating source opinions. We have already addressed the treating source opinions as to her mental impairments. This additional argument by Plaintiff does not persuade us that there is a reason to set aside the ALJ's decision. Rather, the ALJ explained where Plaintiff overstated her complaints, for example, as to her physical impairments. *See, e.g.,* R. 659 (noting conservative treatment for orthopedic impairments and lack of significant abnormalities on diagnostic studies); *id.* (noting "the claimant's pain and functional complaints exceed the objective evidence of record, which indicates a greater level of functioning, despite the

13

claimant's claims to the contrary"). We do not find Plaintiff's credibility argument to compel us to vacate the ALJ's decision.

## V.     CONCLUSION

We see no basis to reverse this case under sentence four of 42 U.S.C. § 405(g). The ALJ complied with her obligation to evaluate the evidence and explain why she relied upon the evidence she did. She did not violate any regulations regarding treating source medical opinions.

The request for review will be denied. An appropriate order will follow.